**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TONY M. RUIZ** **PLAINTIFF**
**ADC #157474**

**v.** **No: 4:23-cv-00512-PSH**

**MISTY BOZE, *et al.*** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER

## I. Introduction

Plaintiff Tony M. Ruiz, an inmate at the Varner Supermax Unit of the Arkansas Department of Correction (ADC), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on June 2, 2023 (Doc. No. 2) and an amended complaint on August 30, 2023 (Doc. No. 14). Ruiz sued multiple defendants at the Pope County Detention Center ("PCDC") based on events that occurred while he was incarcerated there in the summer of 2022. Doc. No. 14. He alleged that officers he identified as John Does 1-3 used excessive force against him while removing him from his cell and that Jane Doe 2 sprayed him with pepper spray. *Id.* at 15-16. He further alleged that the officers involved and other staff refused to allow him to properly decontaminate afterwards. *Id.* at 16-17. After screening Ruiz's amended complaint, the Court allowed his excessive force and decontamination claims against John Does 1-3, Jane Doe 2, and Corporal Wallace in their individual capacities to proceed and dismissed

his other claims. *See* Doc. Nos. 15 & 24. Defendants Sweet and Swatzel were dismissed for failure to state a claim, and Ruiz's official capacity claims, negligence claims, and claims for violating prison policy were also dismissed for failure to state a claim. *Id.* Corporal Wallace was later identified as Sherry Thomas, and the doe defendants were identified as Misty Boze, Austin Bishop, Damian Goacher, and Matthew McDonald (the "Defendants"). *See* Doc. No. 31. These Defendants were served and answered Ruiz's complaint. *See* Doc. Nos. 27, 34, 41 & 45.

The Defendants filed a motion for summary judgment, a brief in support, and a statement of indisputable material facts (Doc. Nos. 88-90). Ruiz filed several pleadings in response, including statements of disputed facts. Doc. Nos. 101-104, 110, 114 & 115. In one of his responses, Ruiz asked to voluntarily dismiss his claims against Defendants Boze and Bishop. *See* Doc. No. 103 at 5-6. That request is GRANTED, and the claims against them are hereby DISMISSED WITHOUT PREJUDICE. For the reasons described below, the remaining Defendants' (Thomas, Goacher, and McDonald's) motion for summary judgment is GRANTED, and Ruiz's claims against them are DISMISSED WITH PREJUDICE.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude

summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. Facts

The Defendants filed a statement of the material facts as to which they contend there is no genuine dispute (Doc. No. 90). The Defendants also submitted an affidavit by Pope County Jail Administrator Rowdy Sweet attaching documents from Ruiz's jail file, including his booking information; relevant requests and grievances; incident reports; relevant jail policies; and the detainee handbook (Doc. No. 90-1 – 90-8). Defendants also submitted the deposition testimony of Ruiz (Doc. No. 90-9) and relevant ADC medical records (Doc. No. 90-10).

Ruiz filed a response to the Defendants' statement of facts in which he identified the facts about which he claims a genuine dispute exists (Doc. No. 110). He also filed a statement of disputed facts (Doc. No. 115). Ruiz did not submit any additional evidence to support the facts he disputes, but instead cited his verified complaint (Doc. No. 14) and his responsive pleadings. Having reviewed the Defendants' statement of facts, Ruiz's responses, and the other pleadings and exhibits, the Court finds the following facts and evidence material to its decision.

### *Ruiz's Arrest and Booking*

On July 22, 2022, Ruiz was booked into the PCDC on a felony charge for Failing to Register as a Sex Offender. Doc. No. 90-2. It is not clear whether he was

arrested while on parole or probation, or if he was serving a suspended sentence. *See* Doc. No. 89 at 3-4 (defendants state they have insufficient information about Ruiz's criminal record and case history to determine if his arrest was akin to a parole or probation revocation or constituted a new felony charge). The Court therefore assumes for purposes of this case that Ruiz was held as a pretrial detainee during the incident at issue. He was convicted and transferred to the Arkansas Division of Correction (ADC) at some point before he filed this lawsuit on June 2, 2023. Doc. No. 2, *Complaint*; Doc. No. 90-9, *Tony M. Ruiz Deposition Transcript* ("*Ruiz Deposition Testimony"*), at 14: 10-19.

***Ruiz's Deposition Testimony***

In his deposition, Ruiz explained that he was in a punitive cell on August 19, 2022, and wanted to call his sister to get money to make bond. *Ruiz Deposition Testimony* at 24:24-25:19. Ruiz asked an officer he believed was McDonald[1] to let him out to make the call, and McDonald said the sergeant would have to do that but would not do so at that time. *Id.* at 25:5-26:1. Ruiz testified that McDonald started to leave so Ruiz said, "Man, I bet you if I was suicidal [the sergeant] come back and talk to me . . .". *Id.* at 26:2-8. He further testified:

> . . . So he locked the door, took a step. Like, I heard him take a step. And he came back and he opened the door, like, "What you just say?" I was like, "nothing, man. Nothing."

[1] The video evidence and incident reports confirm that it was McDonald who had the initial encounter with Ruiz.

> And he comes to in front of my door, like, "No, what did you say? Did you say you're suicidal?"
>
> And I'm like, "Man, get away from my door, yo." And he was like, "Are you suicidal?" I'm like, "man" -- so I start getting mad. So I start getting mad.
>
> And I'm like, "man, get away from my door." And he's like, "Are you suicidal?" And he just kept repeating it over and over and over. So that gets me hot. So I'm like, "Man, you must think I'm a joke or something." Because, you know, I'm hot.
>
> And he keeps repeating it. I'm like, "What? You don't think I'll smack the glasses off you?" And he was like, "Nope." So I was like, "What?"
>
> So he takes a step back. And you can see it on camera. He takes a step back. And he goes, "No." And I'm like, "No what?" And he's like, "I don't think you'll slap the glasses off me." So I take that as like a -- you know what I'm saying? Like, he trying to try me. So I go and I grabbed a book and I tried to -- you know, I'm a lefty. I try to swing the book, you know, like, slide it out to hit him with the book, but the book goes all the way right and hits the TV.

*Id.* at 26:9-25 - 27:1-12. Ruiz testified he then threw another book at McDonald, but it missed him. *Id.* at 27:13-19. Ruiz said that McDonald then called for assistance and Goacher arrived. *Id.* at 27:20-22. Ruiz testified he denied being suicidal and put his hands in the trap to be handcuffed so he could be taken up front. *Id.* at 27:22-25 – 28:1-14. He then said:

> They don't handcuff me. They open the door. So when they open the door, I take a step back and I'm like, like, "What's going to happen?" Because I done got into it. I don't know. Me and the officers, I didn't know if we was gonna get along.

So I take a step back and Goacher yells at me, "Go get your shit." And I looked at Goacher and I look at McDonald. I'm pretty sure it was McDonald. And I don't even say nothing. You know what I'm saying? I'm quiet because I'm kind of like, "well, what's going to happen?"

So next thing I know, he rushes me. And, now, Goacher is, like, 7 feet, 260. He's a big youngster. And he was, like, 19, 20. So I was like 170. I wasn't doing no -- hey, I was small when I came in. I couldn't even do no push-ups or nothing.

So when he rushed me, I mean, I'm not going to be like -- you know, I'm not going to let him just push me. You know what I'm saying? So I tried to, like, you know, stand there or -- but I couldn't mess with him. He pushed me all the way back to the rack. He -- the rack took my legs out, so I sat on the rack, and he's just holding me there.

And then McDonald comes around because he's behind me now, and so there's Goacher in front of me; he's got my arms. McDonald is behind me. And then there's some other dude to the right. There's three of them. And I'm just -- like, he got me pinned to the rack. He got me by my arms.

And so he was like, "All right. Let's take him up front." So they start pulling me by my arms. Now, my wrist is messed up already. You know what I'm saying? Because what happened or whatever. I'm like, "Ah, ah, chill." You know what I'm saying? "Chill. Stop pulling my arms." You know what I'm saying?

. . .

All right. So he starts pulling on my wrist and, like, he pulls me off the rack. He pulls me off, like, the bed. He got me by my wrist. I'm like, "Ah, my wrist." So he let's go of my wrist. And I'm still hot at McDonald. And McDonald is behind me.

So I look and I see McDonald behind me. And I told him I was going to knock his glasses off, so I try to head-butt McDonald. And I guess I caught him by, like, the hat or something. The hat just didn't

> fall off. But after that, they all just, like, boom; we was just like (indicating) -- I don't know. They was just kind of, like, trying to push me and stuff.
>
> . . .
>
> All right. Is it was all, like -- like, they all just converged on me, I guess. Like, they all ran to me, pushed me. They all kind of jumped on me. You know what I'm saying? And so, like, when that was going on, I guess he was mad; McDonald, the person behind me was mad because I just tried to head-butt him. Even though it didn't connect. You know what I'm saying all the way. He got hot. I did my job; I got him hot.
>
> So he -- like, he rushes me. Like, he pushes me. He pushes the other two officers straight into the table. You know what I'm saying? From inside the cell to the dayroom. . . .
>
> . . .
>
> I'm up on the table. "Handcuff me and get me out of here." They don't handcuff me. They pull me back up, they pull me back up. We tussling the whole time. I see the mace can out. Nobody said nothing about no mace; but I see, so I close my eyes. And they pushing, pulling, I mean, every which way. I don't know which way to go because my hands -- my eyes are closed.
>
> And then I open my eyes. As soon as I open my eyes, I get sprayed dead in my face. So now I can't see. I'm in pain. They slammed me on the floor. Somebody jumped on me. They handcuff me. They get me up, walk me to the front. Walk me to the front. They sit me down.

*Id.* at 28:15 – 33:3.

Ruiz acknowledged that during this incident Goacher told him to get his stuff and he did not move. *Id.* at 68:13-14. He said he believed Goacher should have told him to sit on his rack first and warned him before using any force. *Id.* at 68:14-18.

Ruiz further explained that he did not think he should be getting his stuff together if he was going to suicide watch. *Id.* at 68:19-22.

***Video Footage***

On August 19, 2022, E Block 2 video footage displays:

19:49:33: Ruiz reaches his hand through his cell food port, pointing towards McDonald, who is conducting rounds.
19:50:10: McDonald approaches Ruiz's cell. The two converse.
19:50:15: McDonald checks his watch.
19:51:13: Ruiz throws a book at McDonald. The book falls at McDonald's feet.
19:51:19: Ruiz throws another book at McDonald. The book hits the wall behind McDonald.
19:51:30: Ruiz reaches a third book outside of the food port. McDonald uses his radio.
19:51:36: Another officer arrives to assist.
19:51:55: Three other officers arrive to assist.
19:52:07: The officers enter Ruiz's cell.
19:52:45: The officers and Ruiz move from inside the cell to the day area. Officers struggle to restrain Ruiz.
19:52:47: Thomas administers one or two short bursts of pepper spray.
19:52:56: Ruiz is lowered to the dayroom floor.
19:53:30: Officers successfully place Ruiz in handcuffs and assist him to his feet.
19:53:33: Officers escort Ruiz from the dayroom.

Doc. No. 90-6, Video Footage, E Block 2.

On August 19, 2022, IP Camera20 video footage displays:

19:47:28: McDonald enters E Block 2.
19:51:47: Additional officers enter Ruiz's cell for assistance.
19:53:33: Ruiz is walked from his cell while handcuffed down the hall.

Doc. No. 90-6, Video Footage, 6 North.

On August 19, 2022, IP Camera8 video footage displays:

| | |
|---|---|
| 19:54:28: | Ruiz, handcuffed, is escorted by medical personnel through the hallway. |
| 19:54:45: | PCDC personnel retrieve a restraint chair and follow behind Ruiz. |

Doc. No. 90-6, Video Footage, Center Door.

On August 19, 2022, Booking 3 video footage displays:

| | |
|---|---|
| 19:54:37: | Officers escort Ruiz into the booking area. They are met by PCDC medical personnel. |
| 19:55:54: | Officers begin wiping Ruiz's face with a towel. |
| 19:56:15: | Officers consistently hold the towel to Ruiz's face. |
| 19:56:59: | Officers seat Ruiz on a front desk bench. |
| 19:59:47: | Ruiz is assisted to his feet by officers and escorted to the shower room. |
| 20:13:47: | Ruiz exits the shower room in a suicide smock and escorted back to the cells. |

Doc. No. 121, Video Footage, Booking 3.

On August 19, 2022, Shower RM video footage displays:

| | |
|---|---|
| 19:55:21: | PCDC medical personnel retrieve a towel to provide Ruiz. |
| 19:57:18: | An officer enters the shower room hallway with a visibly wet towel and wipes his face in front of a fan. |
| 19:59:52: | Ruiz is escorted into the shower room for further decontamination. |
| 20:01:06: | Ruiz's clothing is removed. |
| 20:13:10: | Ruiz, visibly wet following a decontamination shower, is provided a suicide smock. |
| 20:13:42: | Ruiz exits the shower room in a suicide smock and escorted into the booking area hallway. |

Doc. No. 90-6, Video Footage, Shower Room.

***Incident Reports & Ruiz's Statement***

On August 20, 2022, Deputy Matthew McDonald submitted an incident report, stating:

On August 19, 2022 I, Officer McDonald, was stationed as the West Hall officer. At approximately 7:45 PM I was putting Inmate Christopher Beck back into his cell after he finished cleaning E block and as I was leaving I was stopped by Inmate Tony Ruiz. When he asked if he could get his hour out to call his lawyer. I informed him that he was on lock down and when he was on lock down they do not get to make phone calls of any kind and that to contact his lawyer he would have to write a letter. After I explained this to him he said, "Get me Sarge. Get me the Sarge down here." I asked him why he wanted to speak to Sergeant Boze and he refused to tell me why he wanted to speak with her and I informed him that she would not come and speak to him unless he spoke with me first. I attempted to leave once again and he said, "Tell her I'm suicidal then!" I stopped and opened the door and asked him to repeat what he said. He told me to call Sarge back again. It was at this time that I entered E block again and got up to his door and repeatedly asked him if he was suicidal or not. He always replied with, "Get away from my cell." After a moment he began asking, "Do you think you could take a hit from me." I kept asking him the same question attempting to get a reasonable response from him. After a moment more he once again stated, "Get away from my cell." It was at this time that he attempted to throw two books. However, one was stopped by the feeding hole and the other he missed entirely. It was approximately 7:50 PM when he threw the books and that is when I called for all C/Os to come to E block. The first to arrive were Officers Bishop and Goacher. Inmate Ruiz stuck his hand out of the feeding hole while I was close to the door unlocking it but keeping my weight against it so that Inmate Ruiz could not force it open. I informed both officers that he had said he was suicidal and that he needed to go to booking.

When I opened the door Officer Goacher got in front of the entrance of the cell and said, "Get your stuff." Inmate Ruiz took a fighting stance and replied, "Hell no." It was at this time that Officer Goacher rushed into the cell grabbing Inmate Ruiz's hands and pushing him onto the concrete slab in the corner of the cell. Officer Bishop and I followed behind him. While Officers Goacher and Bishop were in front of him trying to keep him on the ground I went behind him to make space in the cell. Once I was behind Inmate Ruiz we got him to his feet and he stated that his wrists were hurting because of the way Officer Goacher was pulling on them. Officer Goacher loosened his grip and began to ask Inmate Ruiz a question but before Officer Goacher could finish

> Inmate Ruiz reared his head forwards and then hard back to attempt to head butt me. However, the bill of my hat caught most of the blow and kept me from suffering any real damage.
>
> At this point we were fighting him again. Sergeant Boze was in the cell stating over and over, "Ruiz, I'm going to spray you unless you don't comply. Ruiz you're going to get sprayed!" It was at this point that Officers Goacher, Bishop and I were able to get him completely out of the cell. Once he was out we pushed him full force into the nearby table and kept trying to get him to the ground. It was at this point that he was sprayed. I, along with the other officers, also caught some of the spray while trying to subdue Inmate Ruiz. After a short moment Inmate Ruiz stopped fighting us and went to the ground. We ordered him to put his hands behind his back to which he complied. Then we all brought him to booking where we let him decontaminate himself as well as ourselves. After he got done showering himself off he was put into a suicide smock and put in J-5.

Doc. No. 90-5 at 6-7.

On August 20, 2022, Officer Damian Goacher submitted an incident report, stating:

> On 8/19/22 at approximately 7:50pm, I Officer Damian Goacher responded to and all call from west hall officer Mathew McDonald. Upon arrival I was informed by Officer McDonald that inmate Tony Ruiz said he was suicidal and needs to be taken to booking for suicide watch. When Officer McDonald went to open Inmate Ruiz cell door I saw him ball his fists and take a fighting stance. I stepped up to him and yelled at him to grab his things to which he ignored me and became more aggressive. I Officer Goacher rushed him and grabbed his hands to prevent him from punching or hitting anyone and pushed him into the cell wall. Officers McDonald and Austin Bishop assisted in taking inmate Ruiz into the dayroom where Cpl. Thomas stated multiple times to stop resisting or she will mace him to which he did not comply and was then maced in the face. Officers Bishop, McDonald and myself put inmate Ruiz on his stomach and handcuffed him. Officer McDonald and I escorted inmate Ruiz to booking where he was offered a wet towel

> and a shower. I Officer Goacher then gave him a suicide blanket and escorted him to J5. Any further action pending administrative review.

Doc. No. 90-5 at 6.

On August 20, 2022, Deputy Austin Bishop submitted an incident report, stating:

> On 8/19/2022, at approximately 7:50 p.m., I Officer Bishop responded to a All Call in E Block. As I entered the block Officer McDonald and Officer Goacher where already there. I asked what was going on and I was informed Inmate Tony Ruiz had stated he was suicidal and now stating he did not say that and was not going to go on suicide watch. We then opened the door and asked him to collect his stuff and go with us to booking. Inmate Ruiz then entered a fighting stance. We asked him again to just get his belongings and go to booking with us. He did not comply with the orders and was ready to fight all of the Officers in the block. Officer Goacher went hands on taking him into the cell. Inmate Ruiz kept fighting us, we finally got him out of the cell and still trying to get him under control. Once we were completely out of the cell Officer Thomas warned him she was going to spray him multiple times. He still would not stop fighting, so Officer Thomas sprayed him with her pepper spray and we took him to the ground and put cuffs on him. We then took him to booking and got him under control. Medical checked Inmate Ruiz after being sprayed. Once cleared by medical we placed Inmate Ruiz in the shower so he could wash off the pepper spray. Once he was done showering he was placed on suicide watch.

Doc. No. 90-5 at 4.

On August 20, 2022, Sergeant Misty Boze submitted an incident report, stating:

> On 08/19/2022, at approximately 7:50 p.m., I, Sergeant Misty Boze, responded to an All-C.O.'s call to E-block that was made by the West Hall Officer, Matthew McDonald. Upon arriving in the block, Officers Matthew McDonald, Damian Goacher, and Austin Bishop were opening up Inmate Tony Ruiz's cell door. He was informed to get his

> stuff, due to him being escorted to Booking to be placed on suicide watch. He then took a fighting stance in the cell with his fists balled up. Officer Damian Goacher then rushed into the cell to grab on to him to prevent him from attacking officers. Officers Matthew McDonald, Damian Goacher, Austin Bishop, and myself, were all in his cell trying to restrain him as he was fighting us, while Corporal Sherry Thomas was standing outside of the cell door giving him commands to comply with the officers. I gave him two warnings that if he didn't comply with the officers, and lay on his stomach so that we could handcuff him, that I was going to spray him in the face with pepper spray. He continued to fight against the officers, and I gave him another warning that I would spray him if he didn't comply and I un-holstered my pepper spray. At this time, Inmate Tony Ruiz was in a standing position and threw his head back in attempts to head butt Officer Matthew McDonald in the face. They then had to fight Inmate Tony Ruiz out of the cell, and Corporal Sherry Thomas administered pepper spray to his face, and it also was sprayed on other officers. When she administered the spray, it also sprayed in my face and I tried to dodge away from the pepper spray. At this point, when I turned towards the officers, the three male officers had fought Inmate Tony Ruiz towards the floor, and they ended up falling onto the table, before they fell to the floor still struggling with the inmate. I placed my pepper spray back into my duty belt, and began removing my handcuffs to place them on Inmate Tony Ruiz, however, Officer Matthew McDonald had his handcuffs ready and at this time, Inmate Tony Ruiz had stopped struggling against the officers, and he was successfully restrained with the handcuffs. We then escorted him to Booking where we cleaned his face off with a towel, gave him some water to drink and rinse out his mouth, and then we placed him in the shower so that he could decontaminate himself further. The nurse from Medical also checked him out. He was then placed in a suicide smock and then he was escorted to Booking Cell #J-5 without any further issues from him. Pictures were taken on the sergeant's cell phone of the officers and their injuries or burns from the pepper spray. Pictures were also taken of Inmate Tony Ruiz of his face where he was pepper sprayed and the front and back of his shoulder where he said he was feeling some pain. Nothing further to report at this time and all further actions left up at administration.

Doc. No. 90-5 at 5.

On August 20, 2022, Corporal Sherry Thomas submitted an incident report, stating:

> On 8/19/2022 I, Corporal S. Thomas, was posted as Female Rover. An "ALL CALL" was made by Officer McDonald. I was in the Female Rover office, and ran to the 9 hall door to hold it open, then ran to E block with Officers Goacher, Bishop and Sgt. Boze. Inmate Tony Ruiz was bowed up and ready to fight, when I arrived. Officer Goacher went in first, to get Inmate Ruiz off his feet. Officers McDonald and Bishop followed and Inmate Ruiz was fighting them all. Sgt. Boze and I both told Inmate Ruiz to comply or he would be pepper sprayed. He continued to wrestle and cuss the officers. When I saw an opening, between the officers, I administered a short spray of pepper spray to Inmate Ruiz's face. He continued to fight them, for a few seconds, then the spray took effect and he complied with the commands given to him. He was then taken to booking, showered and put on Suicide Watch.
>
> All other actions left up to Administration.

Doc. No. 90-5 at 7-8.

On August 23, 2022, Ruiz submitted a detainee statement, stating:

> I never stated tell her im suicidal then i stated what “if” I was suicidal then cause I needed to speak with the Sgt the officer escalated the incident by after asking if I was suicidal I told him no, get away from my door and he continued asking the same question then called in responders telling them I need to be placed on suicide watch, thats why I got to trying to throw the books at him. after they opened up the door I never stepped towards them or even more and instead was rushed by the biggest officer there, so I just tryed not to get hurt and once Mcdonald came around he punched me on the left back side, so I head butted him or tried to anyway.
>
> I have injuries on my left side, my left knee has a lump/bruise, left upper thigh has a softball size lump still and the incident occured 4/5 days ago and a golf sized one on my back from when the officer struck me on my lower back area. Im the one who stated put me in the shower cause

> they refused to and wouldn't allow me to see medical or take more pictures.
>
> Injuries- are all on left side, no pictures taken.

Doc. No. 90-5 at 10-11.

A hearing was held August 23, 2022, regarding the August 19, 2022 incident, and Ruiz was sentenced to 30 days lock down. Doc. No. 90-5 at 9. Ruiz submitted nine grievances on August 23, 2022, regarding the incident and/or his subsequent medical treatment. Doc. No. 90-3 at 1-9.

***Relevant Medical Records***

On August 19, 2022, at approximately 7:50 p.m., Ruiz was examined by TurnKey medical personnel Ashley Gomez, LPN, who noted: "Pt observed in booking following an altercation with officers. Pt was combative which did not allow a thorough evaluation but pt was observed w/o bleeding, and w/o distress further than the mase used to control the situation and restore safety." Doc. No. 90-4 at 1.

On August 20, 2022, at approximately 7:00 a.m., Ruiz was examined by TurnKey medical personnel, who noted:

> Pt observed in booking during med pass. Pt was antagonistic and uncooperative. Pt presented with c/o general pain was given one time dose of ibuprofen 200mg 2 tab DO per protocol. Pt demanded to be removed from suicide watch. Pt behavior was eratic and threatening. Pt was allowed to submit hand written sick call but was told he would be seen by david on Monday 8/22.

Doc. No. 90-4 at 1.

On August 21, 2022, at approximately 7:00 a.m., Ruiz was examined by TurnKey medical personnel Ashley Gomez, who noted: "Pt was seen on Sunday in booking, pt was agressive, threatening and eratic. Pt was told again he would be seen by David on Monday." Doc. No. 90-4 at 1.

On August 23, 2022, at approximately 10:30 a.m., Ruiz was examined by TurnKey medical personnel, who noted:

> Pt. seen in Medical r/t sick call placed on 8/20/22. Sick call was hand written and tattered, not able to scan. BP 122/82, T 98.2, P-88, R 17, SP02 98%. Pt stated in his hand written sick call his Lt. Shoulder was causing pain. Pt.'s shoulder had no discoloration, edema, or S/S of injury. Pt. then c/o pain in Lt. upper leg. Pt. showed the area of concern = No S/S of discoloration, trauma, or edema. Pt. was given IBU 400mg PO Bid QID for Gen Pain. Pt. stated he was fine at the time of being seen in the clinic, other than pain 2/10 r/t Gen ache & pain. Hand written copy of s/c will not scan.

Doc. No. 90-4 at 2.

On September 2, 2022, Ruiz submitted a sick call request, stating: "my rib on my left side has been causing me extreme pain when i laugh cough or movement, when using my left side and its muscles, i need an x ray or something cause im concerned as to y and whats broken." Doc. No. 90-3 at 14. On September 3, 2022, PCDC user Vendor M. Provider responded: "Your sick call has been scheduled." *Id.* Ruiz also filed a grievance complaining about pain in his ribs that day. *Id.* at 15.

Almost two years later, Ruiz's left shoulder was x-rayed on July 24, 2024, while he was incarcerated at the ADC. Doc. No. 90-10 at 10-12. Dr. Curt Liebman found: "There is no evidence of acute fracture, dislocation or osseous lesion. Id. The glenohumeral and acromioclavicular joint spaces are preserved. The adjacent soft tissues appear unremarkable. IMPRESSION: No acute osseous abnormality." *Id.* at 12. On July 30, 2024, ADC medical personnel Marsha Miller submitted a note to Ruiz, stating: "Based on the results of your diagnostic test, the provider has determined that there is no clinical need for follow-up at this time." *Id.* at 11.

## IV. Analysis

Ruiz's only surviving claims are against Defendants McDonald, Goacher, and Thomas in their individual capacities for excessive force and refusal to allow him to properly decontaminate after he was pepper sprayed on August 19, 2022. Doc. No. 24. The Defendants assert that they are entitled to qualified immunity with respect to these claims because they did not use excessive force and Ruiz was allowed to decontaminate.[2] Doc. No. 89 at 9-10. Because the Court considers Ruiz a pre-trial

---

[2] To determine whether defendants are entitled to qualified immunity, the Court must determine: (1) "whether the facts alleged or shown, construed in the light most favorable to [plaintiff], establish the violation of a constitutional or statutory right," and (2) "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009); *see also Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed

detainee during his incarceration at the PCDC, his claims are evaluated under the Fourteenth Amendment's due process clause. Due process requires that a pre-trial detainee cannot be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

### *A. Use of Force*

To support a claim for relief for excessive force under the Fourteenth Amendment, a plaintiff must allege and prove that the force purposely or knowingly used against him was objectively unreasonable, and objective reasonableness turns on the "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). Factors relevant to assessing the objective reasonableness of force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* "Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

---

first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court finds the following material facts to be undisputed as they are clearly shown on video or admitted to by Ruiz. On October 19, 2022, Ruiz asked McDonald whether the sergeant would come talk to him if he were suicidal. McDonald began questioning Ruiz whether he was suicidal. Ruiz threatened to knock McDonald's glasses off him and threw two books at him. McDonald called for assistance, and entered Ruiz's cell along with Goacher, Thomas, and two other officers at 19:52:07. Goacher told Ruiz to grab his things and was ignored. He pushed him to the cell wall. Ruiz attempted to headbutt McDonald. At 19:52:45, the officers wrestled Ruiz out of his cell (38 seconds after they first entered it). As the officers continued to struggle with Ruiz, Thomas administered one or two short bursts of pepper spray at 19:52:47. Two minutes after he was escorted out of the cell block, he was given a towel to wipe his face at 19:55:54. He was taken to the shower four minutes later at 19:59:47. Ruiz was in the shower room until 20:13:47.

The use of force by the Defendants was reasonable and warranted by Ruiz's behavior and not punitive in nature. Ruiz admitted he had thrown books at McDonald, threatened to knock off his glasses, and was angry or "hot." Although there is no video footage of the 38 seconds the Defendants were inside Ruiz's cell, his only complaint of excessive force during that time concerned Goacher's efforts to restrain him. His deposition testimony clearly describes a struggle which would not have been necessary had he been compliant. He admits he head-butted

McDonald during this fray. Further, although Ruiz complains he suffered a shoulder injury due to Goacher's use of force within his cell, there is no evidence of any significant injury in Ruiz's medical records which supports a finding that the amount of force used by Goacher to restrain Ruiz in less than a minute was not excessive. *Kingsley v. Hendrickson*, *supra*.

Further, the video clearly shows that Ruiz continued to struggle as the officers removed him from his cell. Thomas' use of pepper spray in those circumstances was a reasonable use of force. *See Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding a limited application of chemical spray a "tempered response" to control a recalcitrant inmate who had refused and questioned a direct order from his supervisor and refused to return to his barracks). Even assuming Thomas did not specifically warn Ruiz she would use chemical spray beforehand, as Ruiz alleged in his deposition testimony, there are no other factors indicating that Thomas used an excessive amount of force. "[U]nder current case law, a failure to warn that force will be used, standing alone, will generally not preclude summary judgment in an officer's favor. Generally, there must be other conduct." *See Wright v. State of Arkansas*, No. 4:15-CV-452-BSM-BD, 2016 WL 3023845, at *3 (E.D. Ark. Apr. 26, 2016), *report and recommendation adopted,* No. 4:15CV00452 BSM, 2016 WL 3024081 (E.D. Ark. May 25, 2016) (citing *Walker v. Bowersox,* 526 F.3d 1186, 1189

(8th Cir. 2008) (failed to warn coupled with "super-soaker" amount of spray).[3]

***B. Decontamination***

Ruiz's claim that he was not allowed to properly decontaminate is analyzed under the same standard as an Eighth Amendment deliberate indifference claim. *See Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023) (citing *Hartsfield v. Colburn,* 371 F.3d 454, 456–57 (8th Cir. 2004) (the Eighth Amendment's deliberate-indifference standard applies to pretrial detainees through the Fourteenth Amendment). To succeed with an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

---

[3] *See also Treats v. Morgan, supra* (prolonged burst of pepper spray without warning and inmate denied shower and clean clothes/bedding for three days afterwards)*;* and *Lawrence v. Bowersox,* 297 F.3d 727, 730, 732 (8th Cir. 2002) (inmates' faces, bodies, and cells soaked with pepper spray from a MK-46); *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001) (inmate awakened and sprayed with no warning, then sprayed again after becoming compliant, and not allowed to shower for days)).

The evidence in this case shows that the Defendants were not deliberately indifferent to Ruiz's serious medical need to wash off the pepper spray. The video footage clearly shows that Ruiz was given a towel to wipe his face once he had been removed from his cell block. This was approximately three minutes after the spray had been administered. And four minutes later, Ruiz was taken to the shower and allowed to shower for approximately 12 minutes. The record evidence therefore belies Ruiz's assertion that he was not allowed to appropriately decontaminate after being pepper sprayed. Defendants are entitled to summary judgment on this claim.

## V. Conclusion

Because Ruiz has failed to establish that Defendants Thomas, Goacher, or McDonald violated his constitutional rights, they are entitled to qualified immunity. The Defendants' motion for summary judgment (Doc. No. 88) is therefore GRANTED. Ruiz's claims against Thomas, Goacher, and McDonald are DISMISSED WITH PREJUDICE. Ruiz's claims against defendants Boze and Bishop are DISMISSED WITHOUT PREJUDICE.

DATED this 23rd day of September, 2026.

UNITED STATES MAGISTRATE JUDGE